Jeri J. BERMAN, Plaintiff,

v.

Albert W. THOMSON, A. D. Martin, M. J. Coen, Ralph A. L. Bogan, Jr., Edward D. Boshell, Francis C. Woolard, J. Earle May, Herbert F. Korholz, American Gypsum Company, a New Mexico Corporation and the Susquehanna Corporation, a Delaware Corporation, Defendants,

Massachusetts Mutual Life Insurance Company, a Massachusetts corporation, State Mutual Life Assurance Company of America, a Massachusetts corporation, and the First National Bank of Boston, a national banking association, Additional party defendants as of March 15, 1966.

No. 65 C 2051.

United States District Court
N. D. Illinois, E. D.

May 14, 1968.

Arnold I. Shure, L. Louis Karton, Chicago, Ill., for plaintiff-appellant.

Sumner H. Babcock, Boston, Mass., John T. Chadwell, James E. Hastings, Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., for First Nat. Bank of Boston.

Joseph A. Sommer, Santa Fe, N. M., for American Gypsum.

Robert Mansell, Chicago, Ill., for Ralph Bogan.

Tom Van Dyke, Kansas City, Mo., for Thomson and Coen, A. D. Martin.

Schiff, Hardin, Waite, Dorschel & Britton, Chicago, Ill., for Ralph A. L. Bogan, Ed. D. Boshell, Francis C. Woolard.

Melvan M. Jacobs, Robert O. Mansell & Joseph O. Kostner, Chicago, Ill., for American Gypsum Co., Herbert F. Korholz and The Susquehanna Corp., and J. E. May.

Robert J. Gareis, David Macdonald, Russell Baker, Chicago, Ill., for Thomson, Martin & Coen.

Owen Rall, William E. Rattner and Peterson, Lowry, Rall, Barber & Ross, Chicago, Ill., for Massachusetts Mutual Life Ins. Co. and State Mutual Life Assurance Co.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion of Defendant First National Bank of Boston to Dismiss.*

This is a derivative action, brought on behalf of the Susquehanna Corporation, against certain of its directors and others, to recover for the issuance of a proxy statement alleged to be in violation of Section 14(a) of the Securities Exchange Act of 1934 (15 U.S.C. Sec. 78n), and Rule 14a–9 thereunder.

In essence, the plaintiff, a shareholder of Susquehanna, asks this Court to set aside an Agreement of Merger under which American Gypsum Company (Gypsum) would be merged into Susquehanna, and to enjoin any action hereafter to be taken pursuant to it, and to set aside any action taken under it during the pendency of these proceedings. The gist of plaintiff's aggrievement is con-

tained in Paragraph 26 of the complaint, where she avers:

"If the proposed merger is consummated, the shareholders of SUSQUEHANNA will cease to be shareholders of an almost debt free company with excellent potential, and will become the victims of this merger which will transform their company into a debt burdened company with massive debt charges and maturities as demonstrated by the proxy statement. The gross book value of GYPSUM is offset very largely by such debt burdens, which will now be shifted to SUSQUEHANNA, endangering the investment of every shareholder."

More specifically, as of June 30, 1965, Gypsum had assets of $22,200,000. In addition, it had long term debt totaling $12,517,000, of which $6,000,000 consisted of long-term unsecured notes held by insurance companies, and $6,450,000 consisted of a collateral note from the First National Bank of Boston (Boston Bank) which was secured by 430,000 shares of Susquehanna stock owned by Gypsum.

The specific violations of Section 14 urged by plaintiff need not be considered here, since they are not relevant to the issue at bar, a motion to dismiss by defendant Boston Bank.

Plaintiff alleges, in the Third Amendment and Supplement to the Complaint, that the above mentioned collateral note had a maturity date of July 15, 1966, but that there was an oral understanding between Gypsum and the Bank that if Gypsum were merged into Susquehanna, the maturity date would be extended to December 31, 1966. It is plaintiff's position that since the pledged Susquehanna shares are "grossly insufficient" to pay the note, assets of Susquehanna other than those attributable to Gypsum will be used to pay all or a substantial part of said note, unless this Court enters a restraining order. Accordingly, the bank is added as a defendant for the purpose of requiring it to account and repay to Susquehanna any of the latter's assets received in payment of, or as collateral for, any of Gypsum's obligations.

The Bank moves to dismiss on the grounds that: (1) it is not subject to the jurisdiction of this Court under Sec. 27 of the Exchange Act, 15 U.S.C. Sec. 78aa; (2) although served with process in Massachusetts, it is not subject to process from this Court, and; (3) as a National Banking Association, it may be sued only in Massachusetts, where its home office is located, under the special venue provision of 12 U.S.C. Sec. 94.

We believe that we are without jurisdiction as to the Boston Bank and consequently they must be dismissed as party defendants.

Plaintiff concedes at page five of her memorandum that the Bank was not a party to the alleged violation of Section 14. She states:

"In the present action it is not charged that the bank was a party to the fraud (in the statutory sense of nondisclosure). No damages are sought from it because of any violation of the Act by itself * * *"

However, she urges that our jurisdiction over the Bank is "ancillary" to the other charges under that section, and as such enables her to make use of the nationwide service of process provided in Section 27 of the Exchange Act. We respectfully disagree.

Plaintiff cites no authority for her position that the doctrine of ancillary jurisdiction should apply to the Bank in this action. Certainly no such authority is indicated in Note, "The Ancillary Concept and the Federal Rules," 64 Harv.L. Rev. 968 (1951), cited by defendant. What plaintiff seeks to do is to have us assert jurisdiction over a creditor of a corporate debtor alleged to have violated the proxy rules. What limits on this vague concept would plaintiff have us impose? Surely the spectacle of a courtroom full of bona fide creditors suddenly made party defendants to an Exchange Act proceeding, was foremost in the thinking of Congress when it expressly

**524**

prohibited such an exercise of jurisdiction in Sec. 29(c) of the Exchange Act, 15 U.S.C. Sec. 78cc(c), by providing:

"(c) Nothing in this chapter shall be construed (1) to affect the validity of any loan or extension of credit (or any extension or renewal thereof) made or of any lien created prior or subsequent to June 6, 1934, unless at the time of the making of such loan or extension of credit (or extension or renewal thereof) or the creating of such lien, the person making such loan or extension of credit (or extension or renewal thereof) or acquiring such lien shall have actual knowledge of facts by reason of which the making of such loan or extension of credit (or extension or renewal thereof) or the acquisition of such lien is a violation of the provisions of this chapter or any rule or regulation thereunder, or (2) to afford a defense to the collection of any debt or obligation or the enforcement of any lien by any person who shall have acquired such debt, obligation, or lien in good faith for value and without actual knowledge of the violation of any provision of this chapter or any rule or regulation thereunder affecting the legality of such debt, obligation, or lien."

■ The loan in this case was made on or before June 30, 1965. The alleged unlawful proxy statement was mailed on November 12, 1965. Thus the loan was made well in advance of the alleged violation and could not have been made with "actual knowledge" of the violation or the facts constituting it. By her concession of the Bank's freedom from wrongdoing under the Exchange Act, and failure to aver that the alleged "oral" extension of the maturity date on the loan was in violation of the Act, plaintiff is precluded from successfully making the Bank a proper defendant.

■■ Even assuming that we were willing to take ancillary jurisdiction over the Bank, we believe that we would dismiss for the other reasons asserted by defendant; namely that nationwide ser-

vice of process under Sec. 27 is unavailable to bring in an ancillary defendant, and that venue is governed by Sec. 94 of the National Banking Act, making this an inappropriate forum to sue the Boston Bank. We believe it to be unnecessary to elaborate further on those issues since we need not make findings thereon, in view of our decision on the issue of jurisdiction.

Accordingly, we hereby dismiss the First National Bank of Boston from this action.