**Orville S. CARPENTER, Trustee, Plaintiff,**

v.

**E. M. HALL, Jr., et al., Defendants.**

**C.A. No. 68–H–738.**

United States District Court,
S. D. Texas,
Houston Division.

May 8, 1972.

On Motion for Reassignment
Oct. 17, 1972.

See also, D.C., 311 F.Supp. 1099.

Andrews, Kurth, Campbell & Jones, James W. Dilworth, Houston, Tex., for plaintiff.

Coke & Coke, Houston, Tex., J. Edwin Fleming and Charles R. Haworth, Dallas, Tex., for defendants First National Bank in Dallas, Gene H. Bishop and William D. Breedlove.

## MEMORANDUM OPINION

HANNAY, District Judge.

First National Bank in Dallas (the "Bank"), and two of its officers, Gene H. Bishop ("Bishop") and William D. Breedlove ("Breedlove"), all being named party defendants in the captioned action, have moved to dismiss the action as to them alleging that under 12 U.S.C. § 94 [1] venue in the Southern District of Texas, Houston Division, is improper. Alternatively, Bishop and Breedlove have requested the Court to transfer the action as against them to the United States District Court for the Northern District of Texas, Dallas Division, under the authority of 28 U.S.C. § 1404(a).[2]

The Bank is a national banking association organized and existing under the laws of the United States, established and having its principal office and place of business in Dallas, Dallas County, Texas. Bishop and Breedlove were both

---

1. "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

2. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

officers of the Bank and residents of Dallas County at the time of the matters alleged against them by the Plaintiff in his First Amended Complaint. Dallas County lies within the territorial confines of the United States District Court for the Northern District of Texas, Dallas Division.[3]

The Plaintiff alleges that the Bank, Bishop and Breedlove violated Section 10(b) of the Securities and Exchange Act of 1934[4] and Rule 10b–5[5] promulgated thereunder. Jurisdiction is predicated on Section 2(a)(7) of the Bankruptcy Act,[6] on Section 27 of the 1934 Act[7] and on pendent jurisdiction.[8]

Venue is alleged to exist under Section 27 of the 1934 Act.[9] The issue presented is whether venue in an action brought under the 1934 Act against a national bank is governed by the provisions of 12 U.S.C. § 94 or by Section 27 of the 1934 Act. It is undisputed that an "act or transaction constituting the violation occurred" within this division.

## I.

### VENUE AS AGAINST THE BANK

The question presented is not new but has been decided by a number of courts. The numerical weight of the opinions is in favor of 12 U.S.C. § 94 and against the application of Section 27 venue. General Electric Credit Corp. v. James

Talcott, Inc., 271 F.Supp. 699 (S.D.N.Y. 1966); Bruns, Nordeman & Co. v. Exchange Corp., 284 F.Supp. 387 (S.D.N.Y.1967), affirmed, 394 F.2d 300 (2d Cir. 1968), cert. denied, 393 U.S. 855, 89 S. Ct. 97, 21 L.Ed.2d 125 (1968); Berman v. Thomson, 284 F.Supp. 521 (N.D.Ill. 1968); Rome v. Eltra Corporation, 297 F.Supp. 314 (E.D.Pa.1969); United States National Bank v. Hill, 434 F.2d 1019 (9th Cir. 1970); and Klein v. Bower, 421 F.2d 338 (2d Cir. 1970). See Lemmon Pharmacal Co. v. Richardson, 319 F.Supp. 375 (E.D.Pa.1970) and Wyndham Associates v. Bintliff, 398 F.2d 614, 618 (2d Cir. 1968), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). The contra case is Levin v. Great Western Sugar Company, 274 F. Supp. 974 (D.N.J.1967). The precise question presented is still open in the Fifth Circuit, but the Court is of the opinion that when the question is raised the Fifth Circuit Court of Appeals will adopt the reasoning in *Levin, supra,* and will hold that the 1934 Act controls.

The Court is presented with conflicting statements of the will of Congress. In 12 U.S.C. § 94 Congress has expressed its will of limiting the forums in which national banks are subject to suit while in Section 27 the Congressional mandate is to provide a flexible and multidistrict forum for enforcement of the remedial 1934 Act. It thus becomes

---

3. *See* 28 U.S.C. § 124(a)(1).

4. 15 U.S.C. § 78j(b).

5. 17 C.F.R. #240.10b–5.

6. 11 U.S.C. § 11(a)(7).

7. 15 U.S.C. § 78aa.

8. In a Memorandum of Opinion of December 6, 1971 the Court held that jurisdiction under the Bankruptcy Act and under the 1934 Act was present.

9. 15 U.S.C. § 78aa: "SECTION 27. The district courts of the United States, the United States District Court for the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this title or the

rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this title or under rules and regulations thereunder. Any criminal proceeding may be brought *in the district wherein any act or transaction constituting the violation occurred. Any suit or action* to enforce any liability or duty created by this title or rules and regulations thereunder, or enjoin any violation of such title or rules and regulations, *may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business,* and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. . . ." (Emphasis added)

important to determine the Congressional purpose behind both acts, since clearly one must yield to the other; and in this connection the Securities Act of 1933, which in Section 22(a) [10] contains ver'ie provisions as broad as in Section 27, must be considered.

The intent and purpose of Congress in enacting the 1933 and 1934 Acts has been stated many times by the scholars and courts. Thus in 1 Loss, Securities Regulation (2d ed. 1961) at 130–131, the statement is made,

> Whereas the 1933 Act is concerned primarily with the distribution process, the 1934 Act has to do with post-distribution trading. It has four basic purposes: to afford a measure of disclosure to people who buy and sell securities; to prevent and afford remedies for fraud in securities trading and manipulation of the markets; to regulate the securities markets; *and to control the amount of the Nation's credit which goes into those markets.* [Emphasis added]

*See* also Reader v. Hirsch & Co., 197 F. Supp. 111, 114 (S.D.N.Y.1961).

In Pettit v. American Stock Exchange, 217 F.Supp. 21, 28 (S.D.N.Y.1963), the court stated that the goal Congress had in mind in enacting Section 10(b) was ". . . the protection of the integrity of stock transactions." Likewise, in Hooper v. Mountain States Securities Corporation, 282 F.2d 195, 202 (5 Cir. 1960), cert. denied, 365 U.S. 814, 81 S. Ct. 695, 5 L.Ed.2d 693 (1961), the Fifth Circuit stated:

> . . . Quite obviously the broad purpose of this legislation [the 1934 Act] was to keep the channels of interstate commerce, the mail, and national security exchanges free from fraudulent schemes, tricks, devices, and all forms of manipulation.

In Peoples Securities Co. v. Securities and Exchange Commission, 289 F.2d 268, 271 (5th Cir. 1961), the Fifth Circuit again commented on the factors behind the 1933 and 1934 Act and in so doing stated:

> The Exchange Act has three basic purposes: t'' require dealers to disclose certain basic information to the investing public; to regulate the securities markets; *and to control the amount of the nation's credit that goes into those markets.* (Emphasis added)

More recently, in Lehigh Va. Trust Co. v. Central Nat. Bank of Jacksonville, 409 F.2d 989, 993 (5th Cir. 1969) the Fifth Circuit confirmed the policy of Congress in enacting Section 10(b) and Rule 10b–5,

> " '. . . to protect interstate commerce, *the national credit, . . . to protect and make more effective the national banking system and the Federal Reserve System,* and to insure the maintenance of fair and honest markets in such transactions.' " 15 U.S.C.A. § 78b. (Emphasis added)

In order to implement and enforce the policies of the 1933 and 1934 Acts, Congress has also seen fit to provide, in Section 22(a) and Section 27, respectively, for nationwide service of process and for venue "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated" [Section 22(a)] and "in any such district ["in the district wherein any act or transaction constituting the violation occurred"] or in the district wherein the defendant is found or is an inhabitant or transacts business" (Section 27). The announced policy of Congress in the 1933 and 1934 Acts is, therefore, to provide a convenient forum for suits involving multi-state frauds, no matter how many states the defendants are citizens of or conduct business in. Clapp v. Stearns & Co., 229 F.Supp. 305, 307 (S.D.N.Y. 1964). *See Hooper, supra,* 282 F.2d at 201. The jurisdictional and venue provisions of the federal securities laws

10. 15 U.S.C. § 77v(a).

are the teeth for the enforcement of this important legislation.

That 12 U.S.C. § 94 does not prevail over the venue provisions of the 1933 and 1934 Acts is also supported by an analysis of the intent of Congress in enacting the former. In First National Bank of Charlotte, North Carolina v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L. Ed. 282 (1889), Justice Harlan, speaking for the Court, commented on the Congressional intent in enacting the forerunner of 12 U.S.C. § 94, as follows:

> . . . This exemption of national banking associations from suits in state courts, established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts. First Nat. Bank of Bethel v. Pahquioque Nat. Bank, [81 U.S.] 14 Wall. 383, 384 [20 L.Ed. 840, 842]; Crocker v. Marine Nat. Bank, 101 Mass. 240.

In 1889, the date of the decision in *First National Bank of Charlotte, North Carolina*, the modern facilities for reproduction and transportation could not have been imagined. Today Xerox-type copy machines are as readily available as typewriters, and no two cities are as much as a half a day apart. Moreover the national impact of securities frauds, a by-product of modern communication technology, was already a major threat when Congress passed the 1933 and 1934 Acts.

At the time of enacting the 1933 and 1934 Acts Congress was also aware of the special status of national banks. This is fully evident by resort to the Acts themselves. Congress specifically created exemptions for national banks in Section 3(a)(2) [15 U.S.C. § 77c(a)(2) —exemption of securities issued or guaranteed by national banks] and in Section 12(2) of the 1933 Act [15 U.S.C. § 77l(2)—exemption of securities so issued or guaranteed from civil liabilities]. Regulation "U" (12 C.F.R. 221.-1), promulgated by the Board of Governors of the Federal Reserve System under the express statutory authority contained in Section 7 of the 1934 Act (15 U.S.C. 78g), contains specific and detailed provisions relating to banks, and providing in substance that for the purpose of preventing the excessive use of the nation's credit in the securities market it is unlawful for a bank to make any loan secured by any stock for the purpose of purchasing or carrying any stock listed on a national securities exchange in excess of the margin requirements established by the Board. In these instances Congress was dealing specifically with banks.

■ In Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, *supra*, 409 F.2d at 993 the Court stated, "That Congress made no express general exemption for banks under the fraud provisions of either the Securities Act of 1933 or the Securities Exchange Act of 1934 indicates that Congress did not intend any such exemption." Since national banks are subject to the fraud provisions of these Acts, so also are they subject to the special venue provisions. To hold that Congress, being familiar with national banks, and in several instances dealing specifically with them in the Acts, intended them to be subject to the liabilities created thereby but not subject to their special venue provisions would be to completely distort the clear and express provisions of Section 22(a) and Section 27. If Congress had intended for actions against national banks involving suits to enforce liabilities under the 1933 and 1934 Acts to be brought only in those forums as indicated by 12 U.S.C. § 94 it would have so stated in Section 22(a) and Section 27. Judge Coolahan in Levin v. Great Western Sugar Company, *supra*, 274 F.Supp. at 978 solved the problem by holding:

> It becomes clear that the legislative draftsmen knew about national banks when writing their securities acts, and knew how to except them from provisions of the acts when they chose to

do so. It would be a usurpation of legislative prerogatives for this court to impute an exception for the 1934 act, in view of the background just described. I find the venue provision of the 1934 Act to be the relevant one for purposes of considering defendant banks' motion to dismiss.

■ One of the principal bases of liability asserted against the Bank, Bishop and Breedlove is that they knowingly violated Regulation "U" and Section 7 of the 1934 Act and thereby unlawfully made money available to the Defendants Lilly, Williams and Hall with which the latter carried out, in part at least, the manipulative conspiracy complained of. Having done so, it is alleged that the Bank, Bishop and Breedlove are co-conspirators and, further, that they materially advanced, aided and abetted the conspiracy by their unlawful conduct, thus became liable to Plaintiff in the various capacities alleged in the Complaint. This suit is (among other things) to enforce such liability against these Defendants. If the Act creates liability of this nature against the Bank and the individual movants, a fact assumed for the purpose of the Bank's motion, it then necessarily follows that the special venue provisions of the Act, which permit the suit to be maintained in this Court, must be respected and given effect. In reaching these conclusions the Court has carefully considered the perceptive and scholarly opinion of Judge Friendly in Bruns, Nordeman & Co. v. American National Bank & Trust Co., supra, especially noting Judge Friendly's reasoning that in enacting the 1934 Act Congress could hardly have anticipated that "a national bank might join in a violation of § 10(b)." The Court must respectfully differ with such conclusion. The decisions in this circuit show decisively that the congressional purpose of the Exchange Act was "broad" and does not permit its restriction by a supposition that in 1934 Congress could not have anticipated that banks might do those things that have been charged against the

Bank in this action. See Lehigh Va. Trust Co. v. Central Nat. Bank of Jacksonville, supra. Progressively this liberal interpretation of the securities laws is also becoming apparent in the decisions of the Supreme Court. See SEC v. National Securities, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969). Therefore despite the care with which Judge Friendly and the Second Circuit Court of Appeals reached a contrary result, it is more probable that the Fifth Circuit Court of Appeals will give the jurisdiction and venue provisions of the 1934 Act the same kind of liberal interpretation applied to other sections; and against the force of such interpretation 12 U.S.C. § 94 must give way.

The Court holds that Section 27 of the 1934 Act is applicable and that venue in this District and Division is proper as to the Bank. The Bank's motion is overruled.

## II.

### VENUE AS AGAINST BISHOP AND BREEDLOVE

■ Bishop and Breedlove have claimed that as officers of the Bank venue as to them is also governed by the provisions of 12 U.S.C. § 94. The answer to this claim is supplied by the Bank itself in Memorandum In Support Of Motion To Dismiss Of Defendant First National Bank In Dallas, at p. 7, where the statement is made: "Venue in the present situation is *controlled by statute*," . . . [emphasis added].

The statute is very clear in setting out that it applies *only to associations* and not to officers of associations. For the Court to hold that officers of national banks may claim the privilege would be for the Court to usurp the legislative prerogative. Only Congress can add to the provisions of Section 94.

The Court holds that Section 27 of the 1934 Act is applicable and venue in this District and Division is proper as to Bishop and Breedlove. The motions of Bishop and Breedlove are overruled.

## III.

## THE MOTION OF BISHOP AND BREEDLOVE UNDER 28 U.S.C. § 1404(a)

■ The "Westec" litigation has already been the subject of motions brought under § 1404(a). *See* Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y. 1967), where the Court transferred ten 1933 and 1934 Act cases to this Court, and Wyndham Associates v. Bintliff, *supra*, where the Second Circuit affirmed the District Court in severing the claims against two of the eight defendants and transferring the unsevered claims to this Court. In Schneider v. Sears, *supra*, 265 F.Supp. at 263 the criteria to be considered under § 1404(a) was stated to be as follows:

> The court's discretion under section 1404(a) is broader than under the forum non conveniens doctrine, but the criteria applicable under the statute are substantially those developed under the older doctrine. These include: (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

(Footnotes omitted)

Additionally, a plaintiff's choice of forum is a matter which should be considered and given weight along with the other factors. Unless the balance is strongly in favor of the defendants the plaintiff's choice of forum should prevail. *See* Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

■ Applying the criteria to the motion at bar the Court finds and holds that neither the convenience of parties and witnesses nor the interest of justice support the transfer of the action against Bishop and Breedlove to the Northern District of Texas, Dallas Division, and the motions of Bishop and Breedlove are accordingly overruled.

## ON MOTION FOR REASSIGNMENT

■ The Motion before the Court is by certain defendants for a reassignment of the Westec litigation to another judge because of a claimed potential conflict between this Court's responsibilities as reorganization judge and plenary judge.

As authority for their motion to reassign Movants rely upon two decisions by the Judicial Panel on Multidistrict Litigation i. e. In re Four Seasons Securities Laws Litigation, 328 F.Supp. 221 (Jud.Pan.Mult.Lit.1971) and in re Penn Central Securities Litigation, 322 F. Supp. 1021 (Jud.Pan.Mult.Lit.1971), and a decision by the Court of Appeals for the Tenth Circuit, United Family Life Insurance Company v. Barrow, 452 F.2d 997 (Tenth Circuit 1971).

None of these decisions are factually analogous to or controlling with respect to the disposition of the matter presently before this Court. Aside from the questions of waiver and estoppel, which alone are sufficient grounds for denying the motion, very important distinctions exist between those decisions and the matters involved in the present motion.

The Panel cases dealt only with pretrial matters and therefore involved a potential conflict between the judge's reorganization duties to enjoin litigation involving the debtor and his 1407 (28 U.S.C. Sec. 1407) transferee responsibility to push the pretrial proceedings to an expeditious conclusion. No such potential conflict is here present for the reason that the Westec reorganization proceedings have been substantially completed for more than three years.

An order of this Court was entered in July, 1969, declaring the amended plan of reorganization, which had been ap-

proved by prior orders, to be substantially consummated. No litigation is now pending and in view of the legal effect given by the bankruptcy laws to the approval and consummation of the plan of reorganization none could now be filed against the debtor. In fact, there is no debtor at this time, but only a completely reorganized company that is no longer subject to Chapter X proceedings. Therefore, there could be no occasion for the exercise of reorganization injunctive powers which might interfere with the Sec. 1407 goal of expeditious pretrial proceedings the Panel was concerned with in the cited Panel decisions.

Involved in each of these decisions were very large and very active reorganization proceedings plus the plenary litigation in which the debtor was a party defendant. This is not the case here. Furthermore, movants here seek a reassignment on the merits. Neither of those decisions involved this question since the Panel and Sec. 1407 are concerned only with pretrial matters. Clear evidence that the panel did not intend to hold that it would never be proper for a judge of a substantially completed reorganization to handle other aspects of the same matter is nowhere better evidenced than by the fact that the Panel transferred four separate cases into this very Court in this very proceeding fully recognizing in its published opinion that this Court was sitting both as reorganization judge and plenary judge. See In re Westec Corporation, 307 F.Supp. 559 (Jud.Pan.Mult.Lit.1969).

In the *Barrow* case the Court of Appeals was primarily concerned with an affidavit of bias and prejudice filed pursuant to 28 U.S.C. Sec. 144. That is not here involved. In fact, the movants both in open Court and in their brief disclaimed any intention of proceeding under this statute. In his brief, Defendant Bintliff, on this subject, says the motion to reassign: "is not at all dependent upon the existence of actual bias or prejudice."

While the Court of Appeals chose not to actually rest its decision upon Sec. 144, it is clear that the ground selected has no application here. It is equally clear from a careful reading of the Panel decisions above discussed that those decisions do not support the proposition for which they were cited by the Court of Appeals. There the Court was dealing with a rather obvious Sec. 144 matter and in an apparent effort to avoid a disqualification on those grounds chose to rest its decision upon grounds which, if extended beyond the facts there present, will create a great deal of unnecessary problems for the Federal Judiciary in handling reorganization matters. Those facts are not here present.

Judge Barrow, the demonstrated and apparently admitted long-time personal friend of the very prominent debtor family and of their attorney, the former Governor J. H. Edmondson of Oklahoma had, according to the Court of Appeals, given his tentative blessing to a plan of reorganization which, again according to the Court of Appeals, could succeed *only* if the Trustee was successful in collecting upon the large life insurance policy which was the subject of the plenary action there involved. (Actually the proceeding was for rearrangement under Chapter XI, but that distinction is not here material.)

The important distinction is that there again an active reorganization was under way and the success of the plan tentatively approved by the Court was wholly dependent upon the success of the collateral plenary action. Nothing even similar to that exists in this case. Here the plan of reorganization is already a success and is in no manner whatever dependent upon the success of this lawsuit.

The movant's position, when carefully analyzed, is that a federal judge who either has or has had reorganization responsibilities is, as a matter of law, thence forward disqualified from presiding over any other matter collateral to that proceeding on the subject matter there involved if he might be called upon to make a ruling that might in any manner adversely affect the debtor then in re-

organization or a reorganized company whose reorganization has long since been successfully concluded. This Court does not understand this to be the law.

## II.

Aside from the legal principles just discussed, there are even more compelling reasons as to why the motion to reassign must be overruled.

■ Generally when a federal judge is asked to step aside by a civil litigant, for whatever the reason, he is glad to oblige unless such action will work a real hardship on the other litigants or the other judges. However, in these days of complex, protracted and multi-party lawsuits, particularly in the area of complex class actions, the judge must weigh this general inclination against his duty not to step aside when no legal reason for his doing so exists. The authorities are quite clear that a Judge's duty not to disqualify when there are no valid reasons for his recusation is equally as strong as his duty to step aside where the facts call for that action. Edwards v. United States, 334 F.2d 360, cert. denied, 379 U.S. 1000, 85 S.Ct. 721, 13 L.Ed.2d 702 (5th Cir., 1964, by Judge Rives on his own possible disqualification) and Hodgson v. Liquor Salesmen's Union Local No. 2 et al., 444 F.2d 1344 (2nd Cir. 1971).

The longer a Judge stays in a complex case, the greater is his duty to see it through. The reasons for this were articulated by Judge Palmieri of the Southern District of New York, in Cosmos Bank v. Bintliff et al, CCH Fed. Sec.L.Rep. (1966–1967 Transfer Binder) Paragraph 91,969 (S.D.N.Y.1967). This was one of the cases that one of the principal proponents of the present motion caused to be transferred to this Court almost six years ago with his argument that this Court was uniquely qualified to handle his case *because it was* the Court that had been duly designated to handle all the Westec litigations filed in this district *and* the reorganization proceedings. There Judge Palmieri said:

Overriding, however, all that has been said is a consideration affecting the expeditious management of court business which argues persuasively for the transfer. Judge Allen B. Hannay of the United States District Court in Houston has been designated to supervise the Westec reorganization proceedings and the cases related thereto. In addition, Judge Hannay has been designated to sit in the ten derivative actions transferred from this district and in a number of stockholder actions filed in the District Court in Houston. His familiarity with the legal problems, attorneys, witnesses, and exhibits relating to the affairs of Westec constitutes a precious asset, increasing in value with the passage of time, and which will undoubtedly lighten the burdens of litigants and courts alike. It would be a disservice to the overburdened multi-judge court in the Southern District of New York, as well as to the litigants, to permit the litigation to remain here in the light of Judge Hannay's designation. In short, the husbanding of the judicial effort and the imporance (sic) of rendering expeditious service to litigants, support transfer rather than retention of the case. (At p. 96,301).

This same reasoning was later urged upon Judge Ryan (S.D.N.Y.) and the Court of Appeals for the Second Circuit in two other cases by the same defendant seeking transfer to this Court. Both of those Courts adopted the reasoning and the Second Circuit Court of Appeals quoted with approval Judge Palmieri's reasoning. See Wyndham Assoc. v. Bintliff and Friedman v. Bintliff, CCH Fed.Sec.L.Rep. (1966–1967 Transfer Binder) Par. 92,016 (S.D.N.Y.1967), affirmed (398 F.2d 614, 619–620) (2d Cir. 1968), cert. denied, 393 U.S. 977, 89 S. Ct. 444, 21 L.Ed.2d 438 (1968).

Another proponent of the present motion, Ernst & Ernst in Schneider v. Sears, 265 F.Supp. 257 (S.D.N.Y.1967) also argued strongly before Judge Weinfeld that six cases in which it was

named defendant in New York be transferred to this Court for the same reasons. Judge Weinfeld obliged.

Trading in Westec stock was suspended August 25, 1966. On September 26, 1966, there was filed in this Court the petition of Westec Corporation, Debtor, for reorganization, pursuant to Chapter X of the Bankruptcy Act. That was more than six years ago and since that time this Court, by agreement of all the sitting judges of the Houston Division of this District, has handled all civil matters arising out of the Westec collapse. There are presently pending in this Court over thirty civil lawsuits arising out of the Westec collapse. All have been consolidated for pretrial purposes, and all have been on file for more than four years and most for more than six years. There are numerous plaintiffs other than the Westec Trustee involved in these cases. The question of whether further consolidation will be ordered has been deferred until completion of discovery.

In any event, the technical disqualification now urged with respect to the Trustee would not apply to the other plaintiffs. Would the defendants have those cases left in this Court while the Trustee's case is transferred to another court because of the claimed technical conflict? Also what about the additional party Plaintiff Sykes designated pursuant to the order of the Court of Appeals of this Circuit? Where does his case go under defendant's theory of technical disqualification?

To date, several pre-trial conferences have been held and nine pretrial orders have been entered; many, many rulings have been made on Rule 12 motions, a substantial amount of discovery has been either formally or informally completed, a thorough review of some of these rulings has been made by the Court of Appeals on a mandamus proceeding, and substantial partial settlements have been consummated after extended hearings before this Court.

The documents filed in this Court in connection with this matter occupy more than six legal-sized file cabinets. It would take a new judge at least one year, and perhaps as much as two, to become sufficiently familiar with the history of this proceeding to make any real headway toward final disposition of the matter. Under these circumstances for the Judge of this Court to now step aside on the basis of the tardy technical disqualification now urged and transfer this massive proceeding to another judge would be a disservice to the litigants, the attorneys and the other overburdened judges of this district of such a magnitude as to be unthinkable. Therefore, the Court finds and holds that the proponents of the present motion, first by their own conduct in causing much of this litigation to be lodged in this Court and second by their inexcusable neglect in waiting six years to urge the contention now being made are estopped from asserting and have waived any rights they may ever have had to move for a reassignment on the basis asserted.

The motion to reassign is overruled.

It is so ordered.