Irving M. ROSEN, Trustee in Reorganization of Bermec Corporation, Plaintiff,

v.

Lynda DICK, Executrix of the Estate of Jack R. Dick, Deceased, Herman L. Meckler, Herbert R. Degnan, John Doe I and John Doe II as Executors or Administrators of the Estate of Bernard Kaye, and Audrey Kaye as Personal Representative of Bernard Kaye, Deceased, Robert D. Byrnes, Jerome S. Katzin, Hal A. Kroeger, Thibaut de Saint Phalle, Charles H. Harff, Chadbourne, Parke, Whiteside & Wolff, Joseph Bonura, Peat Marwick Mitchell & Co., Arthur Andersen & Co. and Empire National Bank, Defendants.

ARTHUR ANDERSEN & CO., Defendant and Third-Party Plaintiff,

v.

ARISTOCRAT ANGUS RANCH, Ben R. Houston, and Charles D. Alexander, Third-Party Defendants.

No. 73 Civ. 2388 (CMM).

United States District Court, S. D. New York.

June 26, 1979.

On Motion for Reargument Sept. 18, 1979.

Graubard Moskovitz McGoldrick Dannett & Horowitz, New York City, for plaintiff; Richard I. Donner, Kenneth S. Dannett, Martin S. Siegel, New York City, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, Wilson & McIlvaine, Chicago, Ill., for defendant Arthur Andersen & Co.; John E. Sprizzo,. Peter Fleming Jr., Robert Stolz, Daniel J. Bernstein, New York City, Charles W. Board, Chicago, Ill., of counsel.

Layton & Sherman, New York City, for defendant Herman L. Meckler; Daniel J. Brooks, New York City, of counsel.

METZNER, District Judge:

Plaintiff Irving M. Rosen, as Trustee in Reorganization of Bermec Corporation (Bermec), moves pursuant to Rule 38(a) and (d), Fed.R.Civ.P., for an order striking the jury demand of defendant Meckler, or, in the alternative, directing that plaintiff's claims against defendant Arthur Andersen & Co. (Andersen) be tried separately without a jury.

This action arises out of the financial problems of Bermec and their roots in the financial problems of Black Watch Farms, Inc., which in turn arose out of the fraudulent activities of Jack R. Dick, now deceased. The Trustee has sued Dick's estate, the directors of Bermec, and Bermec's lawyers and accountants. Some of plaintiff's claims have been settled, and the remaining parties seem to fall into three groups: Andersen, an accounting firm, some inside directors, and the outside directors. Plaintiff has undertaken to defend the settling defendants against cross claims that have been asserted by other defendants.

This is quite an old case, having been held in abeyance pending the disposition before Judge Werker of what may be called a companion case, *State Mutual Life Assurance Company of America v. Arthur Andersen & Co.,* 71 Civ. 4036. That case went through a seven-month jury trial and 21 days of deliberation before the jury disposed of all the issues except those between the two principal parties—the plaintiff and Andersen. The jury could not agree on the disposition of those issues. After the question was finally decided as to whether this retrial in that case would be by jury, 581 F.2d 1045 (2d Cir. 1978), this court inquired of the parties here as to whether this case was to be tried to the court or to a jury. It appears that most of the parties thought that it was to be tried to the court until it was determined that one of the parties had filed a demand for a jury.

As far as the parties still remaining in this litigation are concerned, the original complaint did not name Arthur Andersen & Company or Joseph Bonura as parties defendant. The complaint did not demand a jury. Of the original defendants still in the case, only Herman Meckler demanded a jury in his answer which was served only on the plaintiff. This was the only jury demand ever filed in the course of this litigation. Subsequently, a second amended complaint was served without a jury demand and it added Andersen and Bonura as parties defendant. Neither of these defendants demanded a jury in their answers.

■ The law is clear that under the circumstances here Andersen is not entitled to a jury trial on any issues that are not covered by Meckler's jury demand.

"If one party has made a demand within the above time, then the other parties may rely upon the demand as to *all the issues embraced within it.*" (Emphasis supplied.)

J. W. Moore, Federal Practice ¶ 38.40, p. 328 (2d ed. 1978).

The quotation from Moore has been followed in *Plechner v. Widener College, Inc.,* 569 F.2d 1250 (3d Cir. 1977), in which the court stated that an intervenor could rely on the record that a jury demand had been made and he was not required to repeat the demand on "counts which were essentially the same as those asserted by Plechner." 569 F.2d at 1256 n. 3.

A similar ruling is found in *Collins v. Government of Virgin Islands,* 366 F.2d 279 (3d Cir. 1966), where the court stated at 284:

"These principles lead us to conclude that the better rule is that a defendant can rely on the jury demand of a co-defendant to the extent of the issues embraced by that demand."

In *DeGioia v. United States Lines Company,* 304 F.2d 421 (2d Cir. 1962), the Court of Appeals for this circuit discussed the general principles applicable to the right of a co-defendant to a nonjury trial because of the failure of a defendant to serve it with a copy of the jury demand that was served with the latter's answer on the plaintiff. (Actually, the case discussed the problem in relation to third party defendants, but I have changed the nomenclature for purposes of simplicity.) The implication of that decision is that failure of a defendant to serve a co-defendant with a jury demand, absent special circumstances, would allow the nondemanding defendant to have a bench trial. The court, however, found special circumstances and sustained the action of the trial court in submitting the co-defendant's claim to the jury. Here we are concerned with the co-defendants seeking to rely on the jury demand of another defendant served solely on the plaintiff. We do not have to go as far as the Court of Appeals did in its opinion. Suffice it to say that no special circumstances exist to change what appears to be the clear rule that Andersen is not entitled to a jury trial in this case.

Meckler's jury demand could be effectively relied on by his original co-defendants "to the extent of the issues embraced by that demand." *Collins v. Government of Virgin Islands, supra.* So might Andersen if the issues were similar.

I am of the opinion, however, that the issues between plaintiff and Andersen are not the same as those between plaintiff and Meckler except for Paragraph Twenty-eight of the complaint. Paragraph Twenty-eight charges Andersen with aiding and abetting the actions of Meckler and the directors. It is separate from the main claims asserted by plaintiff against Andersen, and plaintiff seeks to discontinue this claim, to which Andersen agrees.

Andersen is being sued for damages alleged to flow from the investigative report it furnished Bermec prior to the acquisition of Black Watch. It is also being sued for damages on the basis of the audited statement subsequently issued concerning Black Watch. The action against Meckler and the other directors is not the subject of any pre-acquisition claim asserted by the plaintiff. Meckler is charged with failure to report his discovery of defalcations by Dick to Bermec's directors prior to Bermec's purchase of the limited partners' interests. He is also being sued for attempting to release claims Bermec had against Empire National Bank.

■ Although Andersen is not entitled to a jury trial as of right, the question remains as to whether the claims asserted against it should be heard along with the claims against the other defendants which are triable to the jury. If there is a joint trial the court could request an advisory verdict, Fed.R.Civ.P. 39(c), or it could decide the nonjury issues itself.

■ The issues between these two principal parties are of such complexity, requiring a tremendously lengthy trial, that this court would have stricken an otherwise proper jury demand covering all parties under the developing theory that such claims are not protected by the Seventh Amendment to the Constitution.

The preliminary estimates indicate that this trial would last four months. The court, however, is mindful of the seven months necessary to try the *State Mutual* case before an experienced and able trial judge, which on its face seems to have had fewer issues to be decided.

In *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), the Court stated at 538 n. 10, 90 S.Ct. at 738 n. 10:

"As our cases indicate, the 'legal' nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries."

This statement has been the basis for several courts to strike jury demands. In "The Right to a Jury Trial in Complex Civil Litigation," 92 Harv.L.Rev. 898 (1979), the author points out (p. 902) that even the "dynamic rationale of *Beacon Theatres* [*Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)] could be applied to expand equity jurisdiction where the law has become inadequate to meet the needs of modern litigation. . . . In *Dairy Queen* [*Dairy Queen v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)] the Court recognized the possibility that the jury might sometimes be inadequate to its task and so provide grounds for declaring a suit equitable."

In the five cases which have stricken the jury demand, the reasoning was advanced that in a complex case, requiring months of trial, (1) most jurors would seek to be excused for economic reasons so that the jury as ultimately selected would not represent a "fair cross section of the community," 28 U.S.C. § 1861, and (2) no jury could be expected to render a rational verdict. A rational verdict can only be based on a comprehension of the evidence. Thus, it was decided that there was no adequate remedy at law and the case should be tried in equity without a jury.

In *Bernstein v. Universal Pictures, Inc.,* 79 F.R.D. 59 (S.D.N.Y.1978), Judge Brieant of this court aptly described what we know to be true in this district. He said at 69–70:

". . . employed citizens or persons engaged in business for their own account and having familiarity with business concepts would seek to be excused upon justifiable claims of undue hardship. . . . This would, at a very minimum, diminish the appearance of fairness. When persons entitled to be excused from

such a lengthy case have been eliminated from the venire, must litigants be left with a panel consisting solely of retired people, the idle rich, those on welfare, and housewives whose children are grown? Hardly a 'fair cross section of the community wherein the court convenes.' "

I must make one qualification and one addition concerning this description. I have not seen any idle rich serving in lengthy trials in the twenty years that I have been on this bench. In addition, we have many jurors who have a borderline understanding of English who may qualify for ordinary trials, but who would not really have the comprehension necessary for this case.

■ The instant case is going to involve complex issues of accounting practice beyond the normal comprehension of the jury that will try the case. *In re Boise Cascade Securities Litigation,* 420 F.Supp. 99 (W.D. Wash.1976). We already have the experience in the companion case of the inability of the jury to resolve those issues after a seven-month trial. As the court said in *In re United States Financial Securities Litigation,* 75 F.R.D. 702, 712 (S.D.Cal.1977):

> "[I]t is no more than common sense for the law to recognize that modern juries are not capable of providing an adequate remedy to those litigants whose disputes involve accounting of complicated commercial transactions."

See also *ILC Peripherals Leasing v. IBM Corp.,* 458 F.Supp. 423 (N.D.Cal.1978).

In *Hyde Properties v. McCoy,* 507 F.2d 301, 306 (6th Cir. 1974), the district court was sustained in its findings that the issues between the parties were both complex and likely to be confusing, and the court found "that a jury is not especially well-qualified to dispose of such issues and that a non-jury trial of the issues is both more efficient and more likely to produce a just result."

In view of these considerations I would not seek an advisory verdict from the jury. Furthermore, there is no saving of time in proceeding with a single trial and having the jury decide the issues covered by the jury demand, and the court deciding the remaining issues between the parties. The jury would be wasting its time sitting and listening to weeks of incomprehensible testimony unnecessary to the discharge of its task. This is the rare case where two trials will be more satisfactory than one, as far as efficient judicial administration is concerned. A bench trial always moves more expeditiously than a jury trial. The overall time for two trials will be less than a single trial with a jury present.

The issues between plaintiff and Andersen will be tried to the court without a jury, and that trial shall proceed before any other claims are tried.

Settle order.

## ON MOTION FOR REARGUMENT

Defendant Arthur Andersen & Co. (Andersen) moves for reargument of plaintiff's motion in which this court ordered that the issues between the plaintiff and Andersen be tried to the court without a jury before any other issues in the case were tried. In the alternative, Andersen requests that the court recuse itself and transfer this case to another judge in this district for trial.

■ A review of the briefs submitted in support of the motion for reargument shows that Andersen is rearguing in the nonlegal sense of the word, except perhaps for the decision in *State Mutual Life Assurance Company v. Arthur Andersen & Co.,* 581 F.2d 1045 (2d Cir. 1978). That case is so easily distinguishable on the facts that there was no need to refer to it. Nowhere is there compliance with Rule 9(m) of the General Rules of this court. That rule requires that the movant submit a memorandum "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Andersen just disagrees with the findings of the court. It has that right, but its remedy is by appeal.

Turning now to the branch of the motion seeking recusal. Andersen makes the offer that if the court grants the reargument sought by this motion, and affords Andersen a jury trial of all the issues in the litigation, it would withdraw the application for recusal. The court of course rejects the offer for many reasons, among which is the fact that it really undercuts movant's

position. It seems to the court that the application for recusal must be more broadly based, and the question is whether a district court judge sitting as a bankruptcy judge should preside over a plenary suit in the district court—jury or nonjury.

The responsibility of a judge is to see that justice is done in matters brought before him for disposition. Conceptually, the discharge of this responsibility cannot create a conflict of interest under the circumstances. The claim that the court would favor the trustee whom it appointed over the defendant in a plenary suit is ludicrous. The appointment was a judicial act mandated by statute. Creditors receive no greater solicitude from the court in pursuing their rights than defendants against whom they proceed. The conflicting issues are determined on their merits.

Andersen argues that 28 U.S.C. § 455(a) requires the court to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As I have already pointed out, the court's impartiality cannot be reasonably questioned in this case just because it is also the bankruptcy judge. Furthermore, the language of Section 455(a) is not applicable to this case because by the very terms of the statute it applies to proceedings instituted after December 5, 1974. Public Law 93–512, 88 Stat. 1609. We are dealing here with a 1973 case.

On April 19, 1973, this court ordered the sale of the operating assets of the bankrupt because a viable plan for its continuation in business could not be offered. The disposition of this litigation is all that remains before there is a final distribution of cash to the creditors. Under the circumstances, there is no basis for granting the motion for recusal. *Carpenter v. Hall*, 352 F.Supp. 806 (S.D.Tex. 1972).

Plaintiff relies on four cases to sustain its position that the bankruptcy judge should not preside over the plenary suit where the trustee is involved. The first of these cases is *United Family Life Insurance Company v. Barrow*, 452 F.2d 997 (10th Cir. 1971). This case was decided under 28 U.S.C. § 144 and the former language of 28 U.S.C. § 455.

Section 144 requires recusal upon the filing of an affidavit that the judge before whom the matter is pending has a personal bias or prejudice against the movant. I do not understand that this court is charged with such personal bias or prejudice. Old Section 455 required disqualification of the judge in any case in which he has a substantial interest, "or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein." As I have already pointed out, I do not consider the appointment of the trustee as amounting to a relationship or connection with him as a party so as to render it improper for this court to preside over the trial.

As clearly pointed out in *Carpenter, supra*, the *Barrow* case involved an application for recusal based on personal interest. Even absent the personal interest, this court can understand that recusal might be proper under the factual situation of *Barrow*, where the court, in its endeavor to work out an arrangement for the continuation in business of the debtor, would be vitally interested in the plenary suit because the arrangement was dependent on success in the plenary suit.

Counsel then relies on *American Employers' Insurance Company v. King Resources Company*, 545 F.2d 1265 (10th Cir. 1976). This was decided by the same circuit court as decided the *Barrow* case. In that case one of the parties requested consolidation of nine different actions. These included five plenary suits, two reorganization proceedings under Chapter X of the Bankruptcy Act, and two "straight" bankruptcy proceedings. The court sustained the denial of the motion below because of the present wording of Section 455 and the decision in *Barrow* that:

> "The preservation of the ranch enterprise under Chapter XI plan has become dependent upon a recovery on the policies. It does not appear that a judge under these circumstances can handle both cases." 452 F.2d at 999.

This latter rationale explains the approach of the Multidistrict Panel in its deci-

sion in *In re Four Seasons Securities Laws Litigation*, 328 F.Supp. 221 (Jud.Pan.Mult. Lit. 1971) and *In re Penn Central Securities Litigation*, 322 F.Supp. 1021 (Jud.Pan.Mult. Lit. 1971). In both cases the Panel avoided designating the bankruptcy judge as the transferee judge because of the former's responsibility "to avoid liquidation of the corporate debtor and to work out a plan of reorganization for its rehabilitation." 322 F.Supp. at 1023.

Unfortunately, this case has been pending a long time. It was started in 1973. The complexity of the issues has been attested to by other proceedings in this court. *State Mutual Life Assurance Company of America v. Arthur Andersen & Co.*, 581 F.2d 1045 (2d Cir. 1978); *State Mutual Life Assurance Company of America v. Arthur Andersen & Co.*, 63 F.R.D. 389 (S.D.N.Y. 1974). The trial of this case was held up pending the disposition of the *State Mutual* case, which took six months to try. That case has now been settled by the parties. This case is now ready for trial and the court is ready to try it.

 Paraphrasing the language in the *Carpenter* case, *supra* at 814, a judge is usually willing to step aside when asked to by one of the parties except in these days of complex and protracted lawsuits when his fellow judges are already overburdened with this type of litigation.

> "[A] Judge's duty not to disqualify when there are no valid reasons for his recusation is equally as strong as is his duty to step aside where the facts call for this action. . . . The longer a Judge stays in a complex case, the greater is his duty to see it through."

See also *Rosen v. Sugarman*, 357 F.2d 794, 798 (2d Cir. 1966).

· Counsel has represented Andersen in these proceedings since July 7, 1977, and has actively participated in preparing the case for trial, including a number of adversary appearances before this court. Only when it was unsuccessful in its demand for a jury trial did Andersen raise the question of recusal. During 1976 and 1977 the parties appeared to believe that at best there might be a question as to whether this case was triable to a jury.

· In its reply papers Andersen raises for the first time the provisions of Canon 3 C(1) which state:

> "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:"

and there then follows a description of the instances, none of which is applicable here. Aside from the designated instances, impartiality might only be questioned in this case if the facts were similar to the four cases discussed above in connection with amended Section 455.

Finally, I find that even if there were a basis for recusal, Andersen has been guilty of laches in making the application. Section 144 requires a timely motion, and even though that section is not involved here, such a requirement should be considered in any motion seeking recusal. The orderly administration of justice calls for such objections to be promptly raised. Absent extraordinary circumstances, the parties should not permit complicated litigation to proceed for a long period of time before one judge, and then, just before trial, seek transfer to another judge.

Interestingly, Andersen has followed the same procedure in a companion case pending before Judge Werker, *Tucker v. Arthur Andersen & Co.*, 73 Civ. 4259. Earlier this year, after the Court of Appeals' decision in *State Mutual v. Andersen, supra*, Judge Werker held in *Tucker* that there would be only one trial for all the litigants which would proceed before a jury, but since Andersen had not demanded a jury trial, any verdict involving Andersen would be advisory. only. Andersen moved for reargument seeking a binding jury verdict or, in the alternative, requesting that the judge recuse himself. The motion was summarily disposed of by endorsement on the back of the moving papers on April 5, 1979.

· Andersen requests the court, in the event of denial of its application for relief, to certify the questions raised by this motion for review by the Court of Appeals pursuant to 28 U.S.C. § 1292(b). I find that

there are controlling questions of law as to which there are substantial grounds for differences of opinion in the following questions determined by the opinions of June 27, 1979 and this opinion. The court is also convinced that an immediate appeal from these orders may materially advance the ultimate termination of the litigation.

The questions certified are:

(1) Is defendant Arthur Andersen & Co. entitled to a trial by jury of the issues between plaintiff and itself based on the jury demand filed by defendant Meckler?

(2) If it is so entitled, is the opinion of this court correct that nevertheless a jury trial in this case is not protected by the Seventh Amendment to the Constitution?

(3) Should the court recuse itself under the circumstances of this case?

Motion otherwise denied.

So ordered.