Jane LEVIN, on behalf of herself and all others similarly situated, Plaintiffs,

v.

The GREAT WESTERN SUGAR COMPANY et al., Defendants.

Civ. A. No. 683–67.

United States District Court
D. New Jersey,
Civil Division.

Sept. 29, 1967.

Kaufman, Kaufman & Kaufman, by Samuel Kaufman, Newark, N. J., Golden, Wienshienk & Mandel, by Ralph Wienshienk, Bernard Rothman, New York City, for plaintiffs.

Stryker, Tams & Dill, by William L. Dill, Jr., Newark, N. J., for defendants, Continental Illinois Nat. Bank and Trust Co. of Chicago and The Colorado Nat. Bank of Denver.

Platoff, Platoff & Heftler, by George Heftler, Union City, N. J., for defendants, The First Nat. Bank of Boston and Security First Nat. Bank.

COOLAHAN, District Judge:

The plaintiff, Jane Levin, a shareholder of The Great Western Sugar Company, sues in this shareholder's derivative suit pursuant to 15 U.S.C. § 78aa (the jurisdictional clause of The Securities Exchange Act of 1934) to enjoin a proposed merger between The Great Western Sugar Company (hereinafter referred to as SUGAR), The Colorado Milling & Elevator Company (hereinafter referred to as MILLING), and the Great Western United Corporation (hereinafter referred to as UNITED), or, in the alternative, to enjoin SUGAR from proceeding with that proposed merger. She also seeks to have this court order MILLING to divest itself of all stock it owns, in an orderly fashion. Joined as defendants in this action are a number of banks, against whom plaintiff seeks an order preventing interference with such a divestiture and enjoining enforcement by the banks of MILLING'S loan obligations to them pending divestiture. In addition, punitive damages of at least $2,000,000.00 are sought to be imposed on the defendants, to be assessed against them either jointly and severally or in such proportions as this court shall fix.

The case is before this court at the present time on defendant banks' (with the exception of the Irving Trust Company) motion to dismiss the action on the ground that this court lacks jurisdiction over the person of defendants, on the ground of insufficiency of service of process, and on the ground of improper venue. In view of the relative factual complexity of the case, it would be best at this point to present a brief synopsis of those facts, as alleged by the plaintiff. In essence, the thrust of plaintiff's complaint is that at some time prior to April 4, 1966 the defendant MILLING, through its officers and shareholders, determined to take control over SUGAR, acquiring shares by tender offer and otherwise, and to merge it with its own controlled dummy corporation, UNITED, with which it too would simultaneously merge. As a result of the apparent success of MILLING'S efforts to acquire SUGAR, MILL-

ING interests took over SUGAR'S Board of Directors on June 1, 1966, at SUGAR'S stockholders meeting, held in Flemington, New Jersey. An agreement of merger was entered into between SUGAR and UNITED and between MILLING and UNITED on April 12, 1967. The mergers have not as yet been consummated.

The object of the proposed mergers, according to the plaintiff, would be to short-change stockholders of SUGAR to an amount greater than 25 million dollars. This object would be accomplished, plaintiff alleges, as a result of the fact that, although MILLING would receive as a result of its merger with UNITED over one half of the UNITED stock, its contribution to UNITED would, from an earnings point of view, be significantly less than would SUGAR'S. In addition, plaintiff alleges that whereas at present SUGAR'S shareholders own stock in a company that is liquid, debt-free, and has a steadily increasing and substantial earnings history, they will, as a result of the merger now be forced to participate· in a firm with an extremely high debt, associated cash flow problems, and heavy interest payments, all of which are the contribution of MILLING to the merged corporation, most of the debt having been incurred by MILLING as a result of loans of money from defendant banks for the purpose of acquiring SUGAR. Defendant banks, having loaned to MILLING the money necessary to in effect acquire SUGAR, are accused by plaintiff of having participated with co-defendants in a conspiracy to defraud plaintiff and to violate Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and regulation Section 240.10(b)5 pro-mulgated thereunder by the Securities Exchange Commission. In addition, plaintiff charges that defendant banks' loans were made in violation of Regulation U of the Federal Reserve Board, promulgated under the authority of the Securities Exchange Act, 15 U.S.C. § 78g.

As has been adverted to, defendant banks' motion to dismiss here alleges improper venue, lack of jurisdiction in this court, and improper service of process. These problems will be considered in that order.

## I. VENUE.

■ Defendants contend that venue was improperly laid in this court, in view of 12 U.S.C. § 94, first enacted in 1864, which provides that actions against national banks, organized under the National Bank Act, "may be had in any district * * * court of the United States held within the district in which such association may be established * * *." The moving banks here are California, Massachusetts, Illinois, and Colorado national banks, which do no business in New Jersey. Although it is clear that section 94 is mandatory, Mercantile National Bank at Dallas v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963), Michigan National Bank v. Robertson, 372 U.S. 591, 83 S.Ct. 914, 9 L.Ed.2d 961 (1963), and would otherwise be applicable here, plaintiff contends that 15 U.S.C. § 78aa [1]— relating to suits for acts violative of the Securities Exchange Act of 1934, which type of suit this is—permits venue to be laid here. Section 78aa provides for venue in the district where any act or transaction constituting a violation of the act occurred. Were that section, rather

---

1. 15 U.S.C. § 78aa provides, in its relevant parts:

   The district courts of the United States * * * shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. * * *

than section 94, applicable, defendants could be sued in this court, since plaintiff's allegation is that defendant banks were part of a conspiracy to violate the 1934 Act which reached fruition in New Jersey when the stockholders of SUGAR met to formalize MILLING'S take-over of SUGAR. Thus the first question for decision here is: Does section 78aa impliedly repeal section 94?

There is little case law in the area. Although it is clear from the decided cases that section 94 has not been repealed by the general venue provision found in 28 U.S.C. § 1391, Buffum v. Chase Nat'l Bank of City of New York, 192 F.2d 58 (7th Cir. 1951); International Refugee Organization v. Bank of America Nat'l Trust & Sav. Ass'n, 86 F. Supp. 884 (S.D.N.Y.1949), there is considerable doubt as to the effect on section 94 of a specific venue provision such as section 78aa of Title 15. The only case which has considered this question with thorough discussion has been General Elec. Credit Corp. v. James Talcott, Inc., CCH Fed.Securities Law Reporter ¶91,-633, (S.D.N.Y.1966), which held that section 78aa of Title 15 (and also section 22 of the Securities Act of 1933, 15 U.S.C. § 77v(a)) *did not* impliedly repeal section 94 as far as venue for suits under the 1933 and 1934 securities acts were concerned. After a full consideration of the issues presented I must decide to the contrary. Section 78aa impliedly repeals section 94 for cases involving Securities Exchange Act violations by national banks.

As was pointed out in *Talcott*, it is true that, as a general rule, implied repeals of previous legislation are not favored, and are to be found only when two statutory provisions are totally repugnant to one another. Agreeing that this is the case, I still find that section 94 of Title 12 and section 78aa of Title 15 *are* totally repugnant to one another. It is clear that if section 94 prevails, the moving defendant banks can be sued only in California; if section 78aa prevails,

suit is permissible here. Such a conflict constitutes total repugnancy.

But another reason compels my decision here. A quick examination of the 1933 and 1934 securities acts will reveal that on a number of occasions the legislative draftsmen found fit to exempt national banks and their securities from the provisions of the act. See 15 U.S.C. § 77c (a) (2), 15 U.S.C. § 77*l* (2), 15 U.S.C. § 78*l* (i). It becomes clear that the legislative draftsmen knew about national banks when writing their securities acts, and knew how to except them from provisions of the acts when they chose to do so. It would be a usurpation of legislative prerogatives for this court to impute an exception from the 1934 act, in view of the background just described. I find the venue provision of the 1934 Act to be the relevant one for purposes of considering defendant banks' motion to dismiss.

Defendant banks, however, contend that even if 15 U.S.C. § 78aa is the relevant statute, that statute is not applicable here, in view of the fact that plaintiff did not "establish a violation of the Exchange Act or a SEC rule thereunder by the * * * [defendant banks] within New Jersey. * * * [T]he plaintiff has not alleged such a violation *anywhere*." (Emphasis retained from original.) This contention may be dismissed quickly. For it has been held on numerous occasions that any allegation of a securities act violation is sufficient for venue purposes even as to a defendant who did not commit an act within the district if that defendant is in league with a defendant who did act within the district. See, *e. g.*, Cooper v. North Jersey Trust Co. of Ridgewood, New Jersey, 226 F.Supp. 972 (S.D.N.Y.1964); Clapp v. Stearns & Co., 229 F.Supp. 305 (S.D.N.Y.1964); Townsend Corp. of America v. Davidson, 222 F.Supp. 1 (D.N.J.1963); Dauphin Corp. v. Redwall Corp., 201 F.Supp. 466 (D.Del.1962).

## II. QUESTIONS OF JURISDICTION AND SERVICE OF PROCESS WITH RESPECT TO CLAIMS UNDER THE SECURITIES EXCHANGE ACT.

Taking last things first, it is clear that if under 15 U.S.C. § 78aa this court has jurisdiction over the moving defendant banks, then the nationwide service of process provided for by section 78aa [2] would be applicable, and defendant banks could not object to the service which was made upon them. As a result, a key question to be disposed of here is the jurisdiction question. And with respect to the jurisdiction question moving defendants' case has some merit.

It bears repeating that plaintiff's complaint rests on two bases. *First,* plaintiff alleges that defendant banks participated in a conspiracy with other defendants to violate 15 U.S.C. § 78j (section 10(b) of the Securities Exchange Act), by using "in connection with the purchase * * * of any security registered on a national securities exchange * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors [here, Regulation Sec. 240.-10(b) (5)]." *Second,* plaintiff alleges that defendants violated Regulation U of the Federal Reserve Board, promulgated under the authority of the Securities Exchange Act, 15 U.S.C. § 78g.

■ In their challenge to the first basis for plaintiff's complaint, defendant banks suggest that plaintiff has not placed herself within the class of actions to which section 78aa applies. This is clearly not the case. There can be no doubt that a suit alleging conspiracy to violate the Securities Exchange Act comes within the jurisdictional boundaries set out by section 78aa. If defendants' concern is as to the *sufficiency* of the evidence standing behind plaintiff's complaint, that can be tested on another occasion. For *jurisdictional purposes*

plaintiff's naked allegation here is sufficient. Cf. Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Baron v. Shields, 131 F.Supp. 370 (S.D. N.Y.1954). See Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■ It is with respect to the second basis for plaintiff's complaint that defendants have a better point. Regulation U of the Federal Reserve Board prescribes limits of credit that may be extended for the purchase of stock where the loan is secured directly or indirectly by that or any other stock. At present, section 221.4 of Regulation U provides that "the maximum loan value of any stock * * * shall be 30 percent of its current market value * * *." Plaintiff alleges that the loans from the defendant banks to MILLING were indirectly secured by the SUGAR stock which was purchased with the loan money, and that the loan value provided for by Regulation U was exceeded by the banks. It is my conclusion that, although there is no problem for plaintiff *jurisdictionally* (*i. e.,* from the point of view of the sufficiency of plaintiff's allegations) with respect to Regulation U, it is clear from the reported cases that a right of action for violation of the regulation (and also of the related Regulation T of the Federal Reserve Board) can accrue only in favor of those who stand in privity of contract with the lending bank. See Natkin v. Exchange National Bank of Chicago, 342 F.2d 675 (7th Cir. 1965); Meisel v. North Jersey Trust Co. of Ridgewood, New Jersey, 218 F.Supp. 274 (S.D.N.Y.1963). Although it could be argued that the privity requirements enunciated in those cases are ripe for change, or for waiver in the present case, two considerations compel an opposite conclusion: a) the plethora of suits against banks that might well follow from a relaxation of the rule, and the consequent adverse effect on banking and commerce, b) the fact that, in any event, the facts of the present case do not in-

dicate that a waiver of the rule for the present plaintiffs would be proper or equitable at the present time. This court questions the applicability of defendant banks' alleged violation of Regulation U to the present case.

## III. PLAINTIFF'S CAUSES OF ACTION UNDER STATE LAW.

As has been adverted to earlier, plaintiff's complaint contains a second count against all defendants, a count asserting this court's pendant jurisdiction and grounded on an accusation that defendants' activities constituted a common law fraud. Defendants contend that plaintiff cannot avail herself of the extraterritorial service of process provisions of 15 U.S.C. § 78aa to effect a valid service of process on them, as far as her common law fraud claim is concerned. Thus the question for decision here is whether 78aa is to be viewed as being broad enough to validate the service of process which was made in the present case.

 The question just posited has caused a split in the decisions of the courts considering the question. See Cooper v. North Jersey Trust Co. of Ridgewood, New Jersey, 226 F.Supp. 972, 980 (S.D.N.Y.1964), which provides a listing of the cases holding each way. Courts which have held service of process to be valid with respect to such local causes of action have done so for reasons of judicial economy; courts deciding to the contrary have done so with citation to Rule 4(f) of the Federal Rules. That Rule provides, in its relevant provisions: "All process * * * may be served anywhere within the territorial limits of the state in which the district court is held, and, *when a statute of the United States so provides,* beyond the territorial limits of that state. * * * " (Emphasis added). To the courts deciding against the propriety of extraterritorial service of process for local pendant claims, the rule's permission for extraterritorial service of process upon passage of a proper statute has not been complied with in 15 U.S.C. § 78aa. According to that view, section 78aa is sim-

ply not specific enough to warrant an inference that it is one of those statutes contemplated by Rule 4.

I adopt this latter view. Judicial economy notwithstanding, the federal rules must come first. For an excellent and thorough discussion of the entire problem see Judge Caffrey's opinion in Wilensky v. Standard Beryllium Corp., 228 F.Supp. 703 (D.Mass.1964).

Moving defendant banks' motion to dismiss is denied, as qualified by this opinion.