FIRST NATIONAL CITY BANK NEW YORK, a National Banking Association, Petitioner,

v.

The Honorable Richard W. SMITH, Judge of the District Court of Ottawa County, Thirteenth Judicial District, State of Oklahoma, and Security Bank and Trust Company, an Oklahoma Corporation, Respondents.

No. 48008.

Supreme Court of Oklahoma.

Jan. 14, 1975.

Sam P. Daniel, Jr., Tulsa, for petitioner.

John R. Wallace and Robert S. Gee, Miami, for respondents.

DOOLIN, Justice.

We assume jurisdiction, accept Petitioner's (National City's) Application and Petition seeking extraordinary relief of mandamus and prohibition by virtue of Article VII, Section 4 of the Constitution of the State of Oklahoma which grants to us general superintending control over all the courts of Oklahoma.

The duality of Federal and State court systems as to jurisdiction and venue is tested by this action, and we are called upon to decide whether State courts have been granted venue of an action authorized under the Securities Act of 1933, 15 U.S. C.A. § 77a et seq., particularly 15 U.S.C.A. § 77v, when measured against the specific provisions of 12 U.S.C.A. § 94.[1]

A condensed statement of the facts alleged in the original Petition or complaint as filed in the trial court of Ottawa County, Oklahoma, reveals Plaintiff/Respondent here (Oklahoma Bank) purchased a note[2]

---

1. 15 U.S.C.A. § 77v(a) : "The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, . . . ."

12 U.S.C.A. § 94: "Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

2. 15 U.S.C.A. § 77b(1) defines a note as a security, and further defines security as "in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, . . . (or)

from Family Loan, Inc. in the amount of $300,000.00, and this on or about March 3, 1974. National Guaranty Insurance Company had issued a surety agreement insuring payment of any indebtedness of Family Loan, Inc. and a copy of such agreement was given to the Oklahoma Bank at the time of purchase as an inducement therefor. The note was not paid when due.

The Oklahoma Bank alleged that Family Loan, Inc., National Guaranty Insurance Company and certain other Defendant corporations were subsidiaries of Standard Life Corporation (parent company). It further alleged that Standard Life Corporation, operating through its various subsidiaries, officers and directors, was controlled by National City, and thus National City was liable to the Oklahoma Bank under the Securities Act of 1933 (15 U.S.C.A. § 77o)[3] the specific allegation contained in Plaintiff's Petition being:

> "The Defendant First National City Bank, New York, by virtue of a loan and other financial transactions, unknown to the Plaintiff but known to the Defendant, controlled the Defendant, Standard Life Corporation (and its other subsidiaries, officers and directors)." (parenthetical phrases supplied.)

Plaintiff further alleged National City and other Defendants have done business (15 U.S.C.A. § 77v(a)) in Oklahoma; all Defendants were guilty of fraud, wrongdoing and misleading acts and statements by withholding facts of the insolvency of Family Loan, Inc., National Guaranty Insurance Company and other subsidiaries, not to mention other wrongful and misleading acts of certain officers and directors of various subsidiaries; that the offer and sale of the $300,000.00 note in question was accomplished by use of the U.S. mails

and interstate commerce (see 15 U.S.C.A. §§ 77e and 77q).

After process was issued to National City, it immediately tested the venue of the District Court of Ottawa County, Oklahoma, by a special motion to quash based upon 12 U.S.C.A. § 94 fixing venue and jurisdiction in the county or city in which the national bank is located. This motion was overruled and National City filed an application and petition for extraordinary relief seeking mandamus and prohibition in this Court against the trial court's allegedly excessive use of its judicial powers.

In granting Petitioner's application and considering its Petition for Writs of Mandamus and Prohibition, we are motivated by the uniqueness of the question involved and activated by the fact that it is a case of first impression in Oklahoma and perhaps in this Union of States.

We hold that the District Court of Ottawa County, Oklahoma, has both jurisdiction (which is not challenged by the parties) and *venue* to hear and determine the Oklahoma Bank's complaint against National City and others.

In support of its position that 12 U.S.C.A. § 94 is controlling and fixes venue in New York in the county and city where the association is located, National City refers us to decisions of the U.S. Courts of Appeal from the 9th and 2d Districts and to the decisions of the U.S. District Courts of Ohio and Georgia. See United States National Bank v. Hill, 434 F.2d 1019 (9th C.A., 1970); Bruns, Nordeman & Co. v. American National Bank & Trust Company, 394 F.2d 300 (2d C.A., 1968), certiorari denied 393 U.S. 855, 89 S.Ct. 97, 21 L.Ed. 2d 125; Allied Steel Tractor Prod. v. First National City Bank of N.Y., 54 F.R. D. 256 (N.D.Ohio, 1971); and Swiss Isreal

---

. . . guarantee of . . . any of the foregoing."

3. 15 U.S.C.A. § 77o: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one

or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, . . . .."

Trade Bank v. Mobley, et al., 319 F.Supp. 374 (S.D.Ga., 1970).

The Respondents refer us to cases reaching an opposite conclusion from the U.S. Court of Appeals in the 3rd District and to decisions from the U.S. District Courts of Texas and New Jersey. See Ronson Corporation v. Liquifin Aktiengesellschaft, 483 F.2d 852 (3rd C.A., 1973); Carpenter v. Hall, 352 F.Supp. 806 (S.D.Texas, 1972); and, Levin v. Great Western Sugar Company, 274 F.Supp. 974 (N.J.C.D., 1967).

■ Examination of all the cases last mentioned indicates that they deal not with complaints under the Securities Act of 1933, but with complaints under the Securities Exchange Act of 1934, (15 U.S.C.A. § 78a et seq.). There appears to be a dearth of cases under the Securities Act of 1933. The trial court in its order overruling National City's motion to quash gave as one of its reasons for such action, the Securities Exchange Act of 1934—with this portion of its order we disagree, for exclusive jurisdiction lies in the Federal courts in the disposition of Exchange Act violations. See 15 U.S.C.A. § 78aa.

At the risk of over simplification, we note the two Acts, Securities Act of 1933 and the Securities Exchange Act of 1934, are aimed at different phases of protecting investors in security matters. For our purpose the Act of 1934 is directed to transactions in securities as commonly conducted upon exchanges and in the over-the-counter markets. It has been said to apply "primarily to post-distribution of securities; Peoples Securities Company v. Securities and Exchange Commission, 289 F.2d 268 (5th C.A., 1961)." The Securities Act of 1933 is directed towards protecting the investor against imposition and fraud in the sale of securities through the use of the mails or facilities of interstate commerce; Oklahoma-Texas Trust v. Securities and Exchange Commission, 100 F.2d 888 (C.C.A., 1939). In Reader v. Hirsch & Co., 197 F.Supp. 111, (N.Y., 1961) that court observed the Securities Act is "concerned primarily with the initial distribution of securities, rather than subsequent trading."

Nonetheless, the Acts stand "in pari materia." See Brown v. Gilligan, Will & Co., 287 F.Supp. 766 (N.Y., 1968); Rosenberg v. Globe Aircraft Corp., 80 F.Supp. 123 (Pa., 1948). There is no doubt that the two Acts are often considered, construed and compared by the various courts in the Nation.

In Ronson Corporation v. Liquifin Aktiengesellschaft,[4] supra, *(Ronson)* the 3rd Circuit Court stated:

"We are guided by the realization that the Securities Exchange Act must be liberally interpreted in order to accomplish

---

4. Prior to *Ronson*, in Carpenter v. Hall, 352 F.Supp. 806, 809, that court when passing on the Securities Act of 1933 and the Exchange Act of 1934 observed:

"[1] In order to implement and enforce the policies of the 1933 and 1934 Acts, Congress has also seen fit to provide, in Section 22(a) and Section 27, respectively, for nationwide service of process and for venue 'in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated' [Section 22(a)] and 'in any such district ["in the district wherein any act or transaction constituting the violation occurred"] or in the district wherein the defendant is found or is an inhabitant or transacts business' (Section 27). The announced policy of Congress in the 1933 and 1934 Acts is, therefore, *to provide a con-* *venient forum for suits involving multi-state frauds*, no matter how many states the defendants are citizens of or conduct business in. Clapp v. Stearns & Co., 229 F.Supp. 305, 307 (S.D.N.Y.1964). See Hooper, supra, 282 F.2d [195] at 201. *The jurisdictional and venue provisions of the federal securities laws are the teeth for the enforcement of this important legislation.*" (emphasis supplied.)

"That 12 U.S.C. § 94 does not prevail over the venue provisions of the 1933 and 1934 Acts is also supported by an analysis of the intent of Congress in enacting the former. In First National Bank of Charlotte, North Carolina v. Morgan, 132 U.S. 141, 10 S.Ct. 37, 33 L.Ed. 282 (1889), Justice Harlan, speaking for the Court, commented on the Congressional intent in enacting the forerunner of 12 U.S.C. § 94, as follows:

'. . . This exemption of national banking associations from suits in state courts,

the congressional objects of regulating the securities market and of affording proper disclosure to the investing public, as well as preventing fraud in securities trading. In recognition of the national rather than local nature of transactions involved, Congress enlarged the applicable venue and service of process requisites. An unduly narrow ruling on venue could not but inhibit and reduce the effectiveness of the remedies provided by the Act.

The *Bruns* court thought there had been no intent to carve out an exception to the older National Bank Act limitation because there was nothing in the legislative history of the venue provisions of the Securities Exchange Act which indicated any consideration of the status of national banks. We interpret this lack of specific reference in a different fashion and believe that the failure to mention national banks in this setting implies a congressional intent to include them among those governed by the more liberal standards of the Securities Exchange Act. Indeed we note, as did the court in Levin v. Great Western Sugar Company, supra, that when it drafted the Act, Congress was aware that certain portions might be construed as applicable to banks and proceeded to make specific

provisions for them. The absence of such an exception in the venue section speaks forcefully for the proposition that the banks also were to be affected by its more expansive sweep.

\* \* \* \* \* \*

Additionally we are aware that the limited forum provided by the National Banking Act has been the subject of severe criticism. The American Law Institute, Study of the Jurisdiction Between State And Federal Courts (1969), recommends repeal saying 'There is no obvious reason why a national bank requires a unique and restrictive venue rule, and cannot be treated as is any other corporation for purpose of venue.' (pp. 412, 413). See also An Assault On the Venue Sanctuary of National Banks, 34 George Washington Law Review 765 (1966).

We conclude, therefore, that the special and wide venue provisions of the Securities Exchange Act govern in a factual situation where a national bank is a party to the action, and therefore the District Court properly refused to dismiss the Bank. Cf. Robinson v. Penn Central Company, (3d Cir. 1973) 484 F.2d 553."

We would apply and adopt the rationale of *Ronson* to the instant case under the Secu-

---

established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts. First Nat. Bank of Bethel v. Pahquioque Nat. Bank, [81 U.S.] 14 Wall. 383, 384 [20 L.Ed. 840, 842]; Crocker v. Marine Nat. Bank, 101 Mass. 240.'

In 1889, the date of the decision in *First National Bank of Charlotte, North Carolina,* the modern facilities for reproduction and transportation could not have been imagined. Today Xerox-type copy machines are as readily available as typewriters, and no two cities are as much as a half a day apart. Moreover the national impact of securities frauds, a by-product of modern communication technology, was already a major threat

when Congress passed the 1933 and 1934 Act."

See also Aetna Casualty & Surety Co. v. Graves, 381 F.Supp. 1159 (U.S.D.C.W.La., 1974) to the following effect:

"Section 94 is a horse-and-buggy statute in a supersonic age. It was enacted a century ago for the convenience of national banking institutions and to prevent the interruption of their business that might result from their books being sent to distant counties in obedience to process from state courts. In the court's opinion, to hold that Section 94 applies to a case where a national bank's sole connection with the principal action is as garnishee under a foreign attachment, required merely to answer garnishment interrogatories propounded by the plaintiff, would be to give a liberal, expansive interpretation to that statute. Congress could not have intended Section 94 to apply in the circumstances here presented."

rities Act of 1933, believing the Act has granted concurrent jurisdiction and venue to State courts by virtue of § 77v.

National City concedes there is a split of authority and attaches great significance to the fact that certiorari was denied in *Bruns,* supra, by the U.S. Supreme Court. We are impressed, but not persuaded. National City further argues that the exclusivity of Federal jurisdiction guaranteed in the Act of 1934 is an additional reason for the rationale of *Ronson,* and that the feature of exclusivity indicates that State courts cannot enforce their orders or processes with alacrity in actions under the Securities Act of 1933 as to discovery, attendance of witnesses, etc., whereas the multi-district forum concept of United States District Court allows immediate response and prompt action to court orders and processes.

The advantage of this feature (multi-district forum) and the Uniform Rules of Federal Procedure available in the U.S. District Courts is granted. But should it be the deciding feature when Congress itself provides concurrent jurisdiction to State courts in equity and actions at law brought to enforce a liability or duty under 15 U.S.C.A. § 77v? The enactment of such uniform laws as the Foreign Depositions Act, Interstate and International Procedures Act, mitigates against the advantages of exclusivity argued by National City and the application of the *Bruns* rationale over the *Ronson* holding.

Our search has indicated that all the States of this Union have provided in varying degrees for discovery, depositions, attendance of witnesses, preservation of records, pretrial attendance of non-resident persons, etc. Certainly, the time-honored practice of granting a commission to courts or court officers of sister states and the comity between courts accomplishes the purposes of some, if not all, of the advantages of the Federal procedures. Modern procedure available in the State courts has eroded the advantage of the exclusivity existing in Federal courts. We would concede that State procedures may not be as swift or as easy to invoke or follow as the Federal Rules for Civil Procedure, but we note that difficulty of proof or procedure is a problem facing Oklahoma Bank in the suit pending in the Ottawa District Court, not National City; and apparently the Oklahoma Bank is willing to accept and bear this difficulty. It is not an inconvenience or difficulty facing National City.

National City cites Mercantile Nat. Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed.2d 525 (1962) [5] in support of the primacy of the National Bank Act of 1864 over procedural provisions of the Texas statutes which latter statutes fixed venue in "the county in which the delinquency proceedings are pending." A review of this case reveals no application of the Securities Act of 1933 or the Securities Exchange Act of 1934. There is no reference or attempted application of these Acts made in the opinion by Justice White. *Langdeau* represents a conflict between State venue application and the National Bank Act. It is true that *Langdeau* merits consideration as a recent application of the venue provisions of the National Bank Act and the importance that the Supreme Court of the United States attached to 12 U.S.C.A. § 94, but we do not believe it dispositive simply because it does not consider § 94 in connection with either of the Securities Acts of 1933 or 1934.

The Securities Act of 1933 and the Securities Exchange Act of 1934 were leveled at the abuses of securities transactions brought to light by the near economic collapse of 1929 and the contribution made by such securities transactions to the general paralysis of the economy of the U.S. of that day. A "never again" feeling is reflected in said Acts.

The 3d Circuit Court (*Ronson,* supra), in refusing to follow a strict construction

5. See Appendices to the opinion of the U.S. Supeme Court in *Langdeau* for a historical note as to the National Bank Act of 1864.

of the National Bank Act of 1864, had this comment reference: *Bruns* and *Langdeau*:

"The *Bruns* opinion referred to the cases of Mercantile National Bank v. Langdeau, 371 U.S. 555, 83 S.Ct. 520, 9 L.Ed. 2d 523 (1963), and Michigan National Bank v. Robertson, 372 U.S. 591, 83 S. Ct. 914, 9 L.Ed.2d 961 (1963), which dealt with conflicts between state venue acts and the National Banking Act. But in those discussions the Supreme Court was not considering the effect of the special venue section of the Securities Exchange Act. The differences between the two situations are obvious, and we think that the cases cited are not controlling in the present situation."

When considering the historical background of the Securities Act of 1933 and the Securities Exchange Act of 1934, it is not surprising that the United States Court of Appeals for the 3d Circuit has refused to be governed by a strict construction of 12 U.S.C.A. § 94. This is but another reason why the reasoning of the 3d Circuit Court should be applied to the Securities Act of 1933. We hold the Securities Act of 1933 grants concurrent jurisdiction and venue in the State courts. Our research has shown that the Federal courts themselves have carved an exception to the strict interpretation of the provisions of the National Bank Act which allows suits to be brought in proper State and Federal courts which are concerned with "local actions" as opposed to "transitory actions." For a discussion and application see National Bank of Commerce v. State, 368 P. 2d 997 (Okl., 1962); Casey v. Adams, 102 U.S. 66, 26 L.Ed. 52.

We conclude the Federal court system has never inferred inferior status to State courts; in fact, the granting of concurrent jurisdiction by § 77v of the Securities Act of 1933 infers exactly the opposite—equality. Such equality is the expressed intent of Congress as we view the matter, and for whatever reason such concurrent jurisdiction was granted, whether to equalize the burden of the enforcement of the Secu-

rities Act of 1933 on the Federal and State judiciaries or for any other valid reason; the Act is compatible with the duality that has developed between State and Federal systems.

Jurisdiction assumed; writs denied; trial court affirmed.

All Justices concur.